**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **NATELYN SPENCER,** | **CASE NO. 1:21-cv-01909** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| | |
| **CLEVELAND CLINIC FOUNDATION, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants.** | |

Currently pending is Defendants Cleveland Clinic Foundation's ("CCF"), Cleveland Clinic Police Department's ("CCPD"), Officer Gregory Cheatham's, and Patrol Officer Goins's Motion for Judgment on the Pleadings.  (Doc. No. 9.)  Plaintiff Natelyn Spencer filed an Opposition to Defendants' Motion on January 3, 2022.  (Doc. No. 14.)  On January 18, 2022, Defendants filed a joint Reply in Support of their Motion for Judgment on the Pleadings and a Motion to Strike certain affidavits, exhibits, and new factual allegations included in Spencer's Opposition.  (Doc. No. 18.)  Spencer did not respond to Defendants' Motion to Strike.

Also pending is Spencer's January 3, 2022 Motion to Amend Complaint and Add New Party Defendant.  (Doc. No. 16.)  Spencer did not attach a proposed amended complaint to her Motion to Amend.  Defendants filed an Opposition to Spencer's Motion on January 4, 2022.  (Doc. No. 17.)  Spencer did not file a reply in support of her Motion for Leave to Amend.  On June 2, 2022, the Court indicated that it would allow Spencer to file a proposed amended complaint so that the Court could fully evaluate Spencer's Motion to Amend and specified a briefing schedule to allow Defendants to file a supplemental opposition and Spencer to file a reply.  Spencer filed her Proposed Amended Complaint on June 21, 2022.  (Doc. No. 20.)  Thereafter, Defendants filed a supplemental Opposition

to Spencer's Motion for Leave to Amend.  (Doc. No. 21.)  Again, Spencer did not file any reply in support of her Motion for Leave to Amend.  For the following reasons, Spencer's Motion for Leave to Amend is DENIED, Defendants' Motion to Strike is DENIED, and Defendants' Motion for Judgment on the Pleadings is GRANTED.

## I.    Background

### A.    Factual Allegations

On September 13, 2019, Spencer took her three grandchildren to visit their mother, Spencer's daughter, in the maternity ward of Cleveland Clinic Hillcrest Hospital.  (Doc. No. 1-2, ¶ 3.)  At some point following Spencer's visit, hospital staff summoned CCPD Officers Cheatham, Goins, and other unnamed officers.  (*Id.* at ¶ 4.)  Hospital staff claimed that they witnessed a domestic violence incident between Spencer and her four-year-old granddaughter.  (*Id.*)  Spencer alleges that "she was pushing the child with her foot and accidently pulling her hair when she tripped," but that she "was not trying to physically harm her granddaughter."  (*Id.* at ¶ 5.)

Cheatham stopped Spencer in the parking garage walkway bridge.  (*Id.* at ¶ 6.)  He asked her to remain there while he spoke to the employees who witnessed the incident and viewed the security footage of the incident.  (*Id.*)  Spencer alleges that she complied with Cheatham's request that she remain.  (*Id.*)

Spencer alleges that Cheatham then approached her again and struck her in the chest with both of his hands, knocking Spencer into metal pipes behind her.  (*Id.* at ¶ 7.)  Spencer alleges that this blow caused bruising to her chest and also caused her to hit her head on the pipes.  (*Id.*)  Spencer alleges that she said nothing and that Cheatham proceeded to grab her right wrist, twisting Spencer's wrist and arm and throwing her into the metal pipes on the wall.  (*Id.* at ¶ 8.)  Spencer alleges that she

was fearful of further injury and allowed Cheatham and Goins to handcuff her and drag her to a police cruiser.  (*Id.* at ¶ 9.)

Spencer alleges that she became aware of pain in her chest, arm, and wrist, and believed she was having a heart attack.  (*Id.* at ¶ 10.)  Spencer told the officers that she was having a heart attack and could not breathe, but the officers "attempted to continue transporting her to the Maple Hts. Police jail."  (*Id.*)  Spencer alleges that only after the Maple Heights police arrived "did they take [Spencer] to the emergency room and allow doctors to give her treatment for her pain in her head, chest, arm[,] and wrists."  (*Id.*)  According to Spencer, doctors discovered that Spencer had a broken right wrist, bruises on her left arm, chest, and both wrists, and "a probable concussion."  (*Id.* at ¶ 12.) Spencer was admitted overnight to the hospital for treatment.  (*Id.*)

Spencer alleges that, following her arrest, she suffered pain, anxiety, humiliation, post-traumatic stress disorder, and discomfort, and was unable to return to work as a children's caregiver. (*Id.* at ¶ 14.)  Spencer alleges that "[t]he defendant improperly recorded the arrest as 'child endangering' which caused [Spencer] to lose her job," even though she was charged with domestic violence, a charge subsequently reduced to "disorderly conduct."  (*Id.*)

### B.    Procedural History

Spencer filed her Complaint in the Cuyahoga County Court of Common Pleas on September 1, 2021.  (Doc. No. 1, ¶ 1.)  Spencer's claims are difficult to discern.  (*See* Doc. No. 1-2.)  It appears that Spencer's first claim is an assault and battery claim, arising under Ohio law.  (*Id.* at ¶¶ 1-14.) Her second and third claims each arise under 42 U.S.C. § 1983 and are nearly identical.  (*Id.* at ¶¶ 15-22.)  Within these claims, Spencer alleges that Defendants violated her constitutional rights in two ways.  First, that Cheatham and Goins violated her right to be free from assault and battery, and that

3

serious excessive use of force constitutes cruel and unusual punishment under the Eighth Amendment.  (*Id.* at ¶¶ 16-21.)  Second, that Defendants were deliberately indifference to her medical needs and failed to allow Spencer to obtain medical treatment.  (*Id.* at ¶¶ 17-19.)  Spencer also appears to allege a vicarious liability claim under § 1983 against CCF and CCPD.  (*Id.*)

Defendants removed Spencer's Complaint to this Court on October 8, 2021.  (Doc. No. 1.) On November 12, 2021, Defendants filed an Answer to Spencer's Complaint.  (Doc. No. 7.) Defendants attached two exhibits to their Answer: (1) Exhibit A, a redacted copy of Spencer's misdemeanor citations for domestic violence and resisting arrest stemming from the events of September 13, 2019 and Spencer's arrest; and (2) Exhibit B, a copy of an August 18, 2020 Lyndhurst Municipal Court judgment entry in which Spencer pleaded No Contest to, and was found guilty of, disorderly conduct and resisting arrest, stemming from the events of September 13, 2019.[1]  (Doc. Nos. 7-1, 7-2.)

Defendants also filed a Motion for Judgment on the Pleadings on November 12, 2021.  (Doc. No. 9.)  Spencer filed an Opposition to Defendants' Motion for Judgment on the Pleadings on January 3, 2022.  (Doc. No. 14.)  On January 18, 2022, Defendants filed a joint Reply in Support of their Motion for Judgment on the Pleadings and a Motion to Strike new affidavits, exhibits, and factual allegations included for the first time in Spencer's Opposition.  (Doc. No. 18.)

---

[1] In ruling on a motion for judgment on the pleadings, the Court considers all available pleadings, including both the operative complaint and the answer, *see* Fed. R. Civ. P. 7(a), as well as "(1) **any documents attached to**, incorporated by, or referred to in **the pleadings**; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice."  *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (emphasis added) (citing *Whittiker v. Deutsche Bank National Trust Co.*, 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.")).

4

Spencer also filed a Motion to Amend Complaint and Add New Party Defendant on January 3, 2022.  (Doc. No. 16.)  Spencer did not append any proposed amended complaint to her Motion to Amend.  Defendants filed an Opposition to Spencer's Motion to Amend on January 4, 2022.  (Doc. No. 17.)  In their Opposition, Defendants requested that the Court grant them leave to file a substantive brief in opposition once Spencer filed a proposed amended complaint.  (*Id.* at PageID# 143.)  Spencer did not file a reply in support of her Motion to Amend.

Upon evaluation of Spencer's Motion to Amend and Defendants' Opposition thereto, the Court issued an order on June 2, 2022, permitting Spencer to file a proposed amended complaint so that the Court could fully evaluate Spencer's Motion to Amend.  (ECF 6/2/2022 Order.)  The Court allowed Defendants, upon filing of Spencer's proposed amended complaint, leave to file a supplemental opposition to Spencer's Motion to Amend and also allowed Spencer to file a reply in support of her Motion to Amend.  Spencer filed her proposed amended complaint on June 21, 2022.  (Doc. No. 20.)  Defendants filed their Supplemental Opposition on July 5, 2022.  (Doc. No. 21.)  Spencer did not file a reply in support of her Motion to Amend.

Thus, all three motions are now ripe and ready for a decision.

## II.     Spencer's Motion to Amend Complaint

### A.     Standard of Review

Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires."  "Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits."  *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987).  However, "[a] motion for leave to amend the complaint may be denied when the motion is the product

5

of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014).

"[W]here a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993). When assessing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

**B.    Analysis**

In her January 3, 2022 Motion to Amend, Spencer requests leave to amend her complaint to add the Ohio Department of Job and Family Services (ODJFS) as a new party defendant. (Doc. No. 16, PageID# 137.) The thrust of Spencer's Motion to Amend is that Cheatham reported Spencer's arrest as one for "child abuse," and that this "misinformation" was supplied to multiple agencies, including the FBI, BCI, and ODJFS. (*Id.* at PageID# 139.) Spencer argues that she was never charged with, or convicted of, child abuse in her Lyndhurst Municipal Court criminal proceedings. (*Id.*) Spencer maintains that she has suffered significant anguish and economic loss because ODJFS will

6

not allow her to work as a childcare provider based on the allegedly false information provided by Officer Cheatham.  (*Id.*)

Spencer also argues that CCF refused subpoenas for the video of her arrest while she was litigating her criminal case in Lyndhurst Municipal Court.  (*Id.* at PageID# 140.)  Spencer claims that CCF denied that any footage of the arrest existed, but that the video of Spencer and her granddaughter "was readily available to the police and prosecution."  (*Id.*)  Spencer also reiterates her claim for excessive force, and asserts that her "claim for emotional injury, PTSD and loss income [*sic*] were a part of the original complaint which notified defendants of the claims."  (*Id.*)  As noted above, Spencer failed to attach a proposed amended complaint to her Motion to Amend.

In their initial Opposition, Defendants opposed Spencer's Motion to Amend on the basis that the time to amend as a matter of course had passed and Spencer had provided no valid reason for now seeking to amend her Complaint.  (Doc. No. 17, PageID# 142.)  Defendants further argued that Spencer had not explained why the allegedly "new" facts were unavailable to her when she filed her original Complaint.  (*Id.* at PageID# 143.)  Defendants argued that leave to amend would "significantly prejudice Defendants, as it would require the expenditure of further time and resources on litigating frivolous issues."  (*Id.*)  Alternatively, Defendants requested leave to file a substantive brief in opposition once Spencer filed a proposed amended complaint.  (*Id.*)  Spencer did not file a reply in support of her motion.

Subsequently, Spencer filed a proposed amended complaint on June 21, 2022.  Spencer's proposed amended complaint sets out five claims, none of which involve ODJFS, name ODJFS as a defendant, or involve any allegations about Spencer's supposed loss of her childcare provider licensure.  (*See* Doc. No. 20.)  Instead, Spencer's proposed amended complaint sets forth the

7

following claims: (1) a claim for negligent infliction of emotional distress, allegedly arising under 42 U.S.C. § 1983; (2) a claim for intentional infliction of emotional distress, allegedly arising under 42 U.S.C. § 1983; (3) a *Monell* claim against CCF, alleging that its custom, policy, pattern, and/or practice of use of excessive force violates the Fourth and Fourteenth Amendments; (4) deliberate indifference to a serious medical need by Defendants Cheatham and Goins in violation of the Fourteenth Amendment; and (5) malicious prosecution and denial of due process, arising under 42 U.S.C. § 1983. (*Id.* at ¶¶ 18-43.) Spencer also references an assault and battery claim, but it is unclear that she alleges such a claim, as none of the numbered claims include assault and battery. (*Id.* at ¶¶ 1, 3.)

In their supplemental Opposition, Defendants argue that Spencer should be denied leave to amend her Complaint for two reasons. (Doc. No. 21.) First, Defendants argue that Spencer's proposed amended complaint is dilatory and would prejudice Defendants. (*Id.* at PageID# 192.) Defendants assert that all of Spencer's proposed amended claims are based on facts readily available to Spencer well before she filed her initial Complaint, and that allowing Spencer to belatedly amend her Complaint unduly prejudices Defendants. (*Id.* at PageID# 193.) Second, Defendants argue that Spencer's proposed amended complaint is futile because Spencer fails to state a claim in any of her newly proposed claims. (*Id.* at PageID# 193-205.)

For the following reasons, the Court concludes that Spencer's proposed amended complaint is futile and therefore her Motion to Amend must be denied.

### 1.     Count 1, Negligent Infliction of Emotional Distress

In Count 1, Spencer alleges that she suffered "negligent infliction of mental distress" when she was assaulted and battered and held under color of law by Defendants. (Doc. No. 20, ¶ 19.)

8

Spencer alleges that Defendants violated her rights under the Fourth and Fourteenth Amendments when they negligently inflicted emotional distress.  (*Id.*)

As an initial matter, the Court notes that an NIED claim is an independent state claim, not a constitutional claim.  "[W]hen federal courts are confronted with an independent emotional-distress claim, they must apply state law."  *Bickerstaff v. Cuyahoga Cnty.*, No. 1:18-CV-01142, 2019 WL 7500494, at *21 (N.D. Ohio Aug. 12, 2019) (R. & R. adopted 2019 WL 5303967, Oct. 21, 2019) (applying Ohio law to plaintiff's NIED claim, rather than constitutional law, in a § 1983 case). Therefore, the Court will construe Spencer's NIED claim as arising under Ohio law, rather than constitutional law.  *Id.* (citing *Voyticky*, 412 F.3d at 678).

Ohio courts narrowly limit the scope of NIED claims to situations in which the plaintiff was either a bystander to a grievous accident or was in fear of some physical peril to her own person. *Dodge v. U.S.*, 162 F. Supp. 2d 873, 879 (S.D. Ohio 2001) (citing *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 40 (1996)); *see also, e.g., Snyder v. U.S.*, 990 F. Supp. 2d 818, 833 (S.D. Ohio 2014).

In *Snyder v. U.S.*, the plaintiff brought an NIED claim after a joint local and federal law enforcement task force mistakenly arrested her, rather than the true suspect, in an ongoing illegal drug investigation.  *Id.* at 824-25.  The court concluded that the plaintiff failed to state a claim for NIED because the "actual physical peril" that the plaintiff complained of was being handcuffed and arrested by law enforcement and held for several hours.  The court reasoned that no such "peril" was involved in effectuating the plaintiff's arrest, but rather "quite the opposite, as these practices are designed to protect law enforcement from those being arrested and those arrested from others taken into custody." *Id.* at 834.

9

The Court concludes that Spencer has insufficiently pleaded an NIED claim. First, as noted above, Spencer clearly failed to plead this claim under Ohio law. Spencer dedicated just three paragraphs in her proposed amended complaint to her NIED claim—and a significant portion of two of the three paragraphs is dedicated to pleading this claim under the Fourth and Fourteenth Amendments when such an emotional distress claim is not cognizable under the Constitution. (Doc. No. 20, ¶¶ 19, 21.) Relatedly, because Spencer fails to properly allege her claim under Ohio law, she fails to plead the requisite elements of an NIED claim under Ohio law. (*Id.*) Third, beyond vaguely alleging that "[t]he defendant's denial of safe and proper handling of [Spencer] in handcuffs" caused her irreparable damage, Spencer fails to plead any facts that would make her allegations of negligence against Defendants more plausible. Indeed, Spencer fails to identify which "defendant" in paragraph 20 denied "safe and proper handling" of Spencer while she was handcuffed. (*Id.*) These allegations fail to suggest that Spencer has a right to relief "above a speculative level." *Twombly*, 550 U.S. at 570. Moreover, the Court finds the reasoning in *Snyder* to be somewhat analogous here. Spencer's complaints arise out of her arrest by CCPD officers. As the *Snyder* court pointed out, arrest practices are not akin to a "physical peril" like a dangerous and unexpected accident, but "are designed to protect law enforcement from those being arrested and those arrested from others taken into custody." *Snyder*, 990 F. Supp at 834. The Court agrees with Defendants that Spencer fails to state a claim for negligent infliction of emotional distress and, therefore, any amendment to include this claim would be futile.

### 2. Count 2, Intentional Infliction of Emotional Distress

In Count 2, Spencer alleges that Defendants breached their duty to act in a reasonable and prudent manner when they engaged in extreme, outrageous, and/or reckless conduct by striking her

10

in the chest, twisting her handcuffed arm and wrist, and dragging her to a police cruiser while she begged for medical attention.  (Doc. No. 20, ¶¶ 22-23.)  Spencer alleges that she suffered physical peril and psychological trauma because of these actions.  (*Id.* at ¶ 24.)  Spencer alleges that this intentional infliction of emotional distress claim is actionable under 42 U.S.C. § 1983.  (*Id.* at ¶ 25.)

As an initial matter, the Court notes that an IIED claim is an independent state claim, not a constitutional claim.  "[W]hen federal courts are confronted with an independent emotional-distress claim, they must apply state law."  *Bickerstaff v. Cuyahoga Cnty.*, No. 1:18-CV-01142, 2019 WL 7500494, at *21 (N.D. Ohio Aug. 12, 2019) (R. & R. adopted 2019 WL 5303967, Oct. 21, 2019) (applying Ohio law to plaintiff's NIED claim, rather than constitutional law, in a § 1983 case). The Sixth Circuit has held expressly that "intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation."  *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005).  Thus, Spencer's IIED claim is actionable only under Ohio law, not § 1983.

In order to succeed on an IIED claim under Ohio law, a plaintiff must demonstrate that: (1) the defendant intended to caused emotional distress, or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was outrageous and extreme; (3) the defendant's conduct was the proximate cause of plaintiff's psychic injuries; and (4) the plaintiff's emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it.  *Bolander v. BP Oil Co.*, 128 Fed. Appx. 412, 419 (6th Cir. 2005) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503 (Ohio Ct.App. 1997) and *Yeager v. Local Union 20*, 453 N.E.2d 666 (1983), abrogated on other grounds by, *Welling v. Weinfeld*, 113 Ohio St.3d 464 (2007).  Conduct is "extreme and outrageous" when it "go[es] beyond all possible bounds

11

of decency, and [would] be regarded as atrocious, and utterly intolerable in a civilized community."
*See Yeager*, 453 N.E.2d at 671.

In *Gill v. Kovach*, 729 F. Supp. 2d. 925, 941 (N.D. Ohio 2010), the court held that the conduct of police officers, who "used excessive force by repeatedly using a taser to obtain control over" the plaintiff was not beyond all possible bounds of decency and did not constitute intentional infliction of emotional distress.  In *Martin v. City of Broadview Heights*, No. 1:08-cv-2165, 2011 WL 3648103, at *1-2 (N.D. Ohio Aug. 18, 2011), a police officer sat on the decedent, who was lying prone on the ground, with the officer's knees digging into the decedent's back, hit the decedent in the side with compliance shots, punched the decedent multiple times in the face, and pressed the decedent facedown until the decedent made a gurgling noise and became unresponsive.  *Id.*  The decedent subsequently asphyxiated and died because of the officer's actions.  *Id.* at *2.  The court determined this was not "extreme and outrageous conduct" because "[w]hile Defendant Officers conduct may constitute excessive force, a battery, and assault, and thus was unreasonable and even reckless, their restraint of the decedent was not so 'utterly intolerable in a civilized community.'"  *Id.*  In *Hayward v. Cleveland Clinic Foundation*, 878 F. Supp. 2d 860, 866 (N.D. Ohio 2012) (aff'd in part and rev'd in part, 759 F.3d 601 (6th Cir. 2014)), the plaintiff alleged that, following his arrest, the defendant-officers pulled him from his house, forced him onto the ground, put him in handcuffs, and then proceeded to "punch[ ] and kick[ ] him in the head and body, hurl[ ] racial epithets at him, beat him with their batons, and stun[ ] him with Tasers."  The court concluded that the plaintiff's intentional infliction of emotional distress claim failed because, though the defendant-officers' actions may have been "unreasonable," their actions were no more egregious than the defendant-officers' conduct in *Gill* and *Martin*.  *Id.*

12

Here, the Court concludes that Spencer's IIED claim likewise fails.  She alleges that the defendant-officers twisted her arm and wrist while she was handcuffed and forced her into a police cruiser, and refused to immediately provide her with medical care.  (Doc. No. 20, ¶ 24.)  However, these allegations fail to rise to the level of "extreme and outrageous."  *Yeager*, 453 N.E.2d at 671. Indeed, Spencer's allegations are significantly less egregious than the allegations dismissed in *Hayward*, *Gill*, and *Martin*.  *See supra*.  Spencer's proposed IIED claim fails to allege conduct that is "utterly intolerable in a civilized society," *Yeager*, 453 N.E.2d at 671, and, thus, she fails to state an IIED claim.  Any amendment to incorporate this claim would therefore be futile.

### 3.     Count 3, *Monell* Claim Against CCF

In Count 3, Spencer alleges that Defendant CCF violated the Fourth and Fourteenth Amendments by "maintain[ing] a policy and/or custom and/or pattern and/or practice of inadequately and improperly investigating citizen complaints of police misconduct and officers' use of excessive force and/or allowing the use of excessive force, failing to properly supervise Cleveland Clinic Foundation Police Department officers."  (Doc. No. 20, ¶ 30.)  Spencer alleges that CCF was aware of problems with use of excessive force but failed to discipline officers for using such force and failed to properly train officers.  (*Id.*)  In support of her *Monell* claim, Spencer alleges that the "history of police harassment and excessive use of force by the Cleveland Clinic Police dates to 2014 when officers brutalized a black family in their home with tasers and batons based on a traffic violation," and also cites to an excerpt from a 2020 ProPublica study examining CCPD's disproportionate charging of Black citizens with violations compared to white citizens.  (*Id.* at ¶¶ 4, 30, Ex. A.)

However, before the Court addresses Spencer's *Monell* claim, the Court notes that it is unclear whether Spencer's proposed amended complaint contains a separate underlying constitutional claim

for excessive force brought against the defendant officers. (*See* Doc. No. 20.) Though Spencer alleges that CCF maintained a policy and/or custom that tolerated CCPD officers' use of excessive force, none of Spencer's numbered claims in her proposed amended complaint are for the officers' alleged use of excessive force against her. (*Id.*) Within Count 3, Spencer alleges that Cheatham struck her in the chest, which knocked her into metal pipes and then twisted her wrist and arm, which caused Spencer "to pull away" from Cheatham and that Cheatham's "serious excessive use of force after [Spencer] was handcuffed, breaking her wrist and drug [*sic*] her to the police cruiser many feet away in the parking lot constitutes excessive force . . . ." (*Id.* at ¶ 34.) Thus, to the extent that Spencer alleges an underlying excessive force claim against Cheatham, it appears to be that Cheatham allegedly applied excessive force when he struck her in the chest, knocked her into metal pipes, twisted her wrist and arm, handcuffed Spencer, and then dragged her to the police cruiser in the course of arresting her. (*Id.*)

To maintain a claim under 42 U.S.C. § 1983, a plaintiff must establish that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cnty. Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). However, in *Heck v. Humphrey*, "the Supreme Court held that a plaintiff cannot assert a § 1983 claim if success on that claim would 'necessarily imply the invalidity' of an underlying state criminal conviction, unless the plaintiff can 'prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (quoting *Heck*, 512 U.S. at

14

486-87.) Conversely, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

In the Sixth Circuit, "there are two circumstances under which *Heck* may apply to bar a § 1983 claim." *Hayward*, 759 F.3d at 608. "The first is when the criminal provision makes the lack of excessive force an element of the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). "The second is when excessive force is an affirmative defense to the crime." *Id.* Under either circumstance, "the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction." *Id.*

Under Ohio law, "a *lawful* arrest is a necessary element of a conviction for resisting arrest." *Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007). Ohio's resisting arrest statute, Ohio Rev. C. § 2921.33, provides that "[n]o person, recklessly or by force, shall resist or interfere with a *lawful arrest* of the person or another." Ohio Rev. C. § 2921.33(a) (emphasis added). The Sixth Circuit has suggested that a lawful arrest cannot occur if the arresting officer has used excessive force. *White v. Ebie*, No. 98-3958, 1999 WL 775914, at *1 (6th Cir. Sept. 24, 1999) ("An arrest is not lawful, under Ohio law, if the arresting officer used excessive force."). Accordingly, in certain circumstances, courts have found that an excessive force claim "attack[s] an essential element of the resisting arrest offense, i.e., the lawfulness of the arrest," and is thus barred by *Heck*. *Id.* at *1; *see also Swiecicki*, 463 F.3d at 494.

Additionally, Ohio courts have held that an officer's use of excessive force is an affirmative defense that a criminal defendant may raise in response to a charge of resisting arrest. *E.g.*, *Mansfield*

15

*v. Studer*, Nos. 2011-CA-93, 2011-CA-94, 2012 WL 4955278, at *15 (Ohio Ct. App. 5th Dist. Oct. 17, 2012) ("[E]xcessive force is an affirmative defense to resisting arrest."). Specifically, the Sixth Circuit has determined that "*pre-arrest* excessive force is an affirmative defense to a charge of resisting arrest in Ohio." *Hayward*, 759 F.3d at 613 (emphasis added). "Therefore, a criminal conviction for resisting arrest in Ohio cannot stand where a criminal defendant successfully asserts the affirmative defense of pre-arrest excessive force; and a § 1983 claim of excessive force would necessarily imply the invalidity of an underlying conviction for resisting arrest." *Id.* at 611. On the other hand, "*Heck* does not bar § 1983 suits alleging *post-arrest* excessive force." *Id.* Applying this analysis, in *Hayward*, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's excessive force claim because "the alleged excessive force occurred in response to Plaintiff's resistance and before an arrest was effectuated." *Id.* at 613.

Here, Spencer pleaded No Contest to, and was found guilty of, resisting arrest in contravention of Ohio Rev. C. § 2921.33 on August 18, 2020. (Defs. Answer Ex. B, Doc. No. 7-2.) This conviction stemmed from Spencer's September 13, 2019 arrest at Hillcrest Hospital by Cheatham and Goins. Further, according to Spencer's proposed amended complaint, Cheatham's alleged use of excessive force against Spencer, namely his shoving her in the chest, grabbing and twisting her right wrist and arm, and dragging her to the police cruiser, occurred before and during Cheatham's arrest of Spencer. (Doc. No. 20, ¶ 34.) As such, the Court finds that the allegedly excessive force occurred before Spencer was placed under arrest (shoving Spencer, grabbing her wrist, and twisting her arm) and during Cheatham's effectuating of her arrest (dragging her to the police cruiser after she attempted to "pull away" as he placed her in handcuffs). Thus, because the alleged excessive force occurred before and during Spencer's arrest, any excessive force claim would impermissibly attack an essential

16

element of Spencer's resisting arrest offense, i.e., the lawfulness of her arrest.  Further, because pre-arrest excessive force is an affirmative defense to a charge of resisting arrest in Ohio, any potential success on an excessive force claim would render her conviction for resisting arrest invalid. Therefore, any potential claim for excessive force is barred by *Heck*.

The Court now turns to the substance of Spencer's *Monell* claim.  It is well established that an institution may not be sued for injuries inflicted solely by its employees or agents under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  *See also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012).  Rather, a plaintiff may only hold a defendant entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692-94).  Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'"  *D'Ambrosio,* 747 F.3d at 388-89 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To properly allege an institutional liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478

17

(6th Cir. 2013).  *See also D'Ambrosio*, 747 F.3d at 386.  Moreover, a plaintiff must show a "direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Doe v. Claiborne Cnty., Tenn. By. & Through Claiborne Cnty. Bd of Educ*., 103 F.3d 495, 508 (6th Cir. 1996) (internal quotation marks omitted); *see also Baynes*, 799 F.3d at 621; *Fair v. Franklin Cnty., Ohio*, 2000 WL 659418 at *3 (6th Cir. May 11, 2000) ("*Monell* requires that a plaintiff identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) (same).

For the following reasons, Spencer's *Monell* claim against CCF fails as a matter of law. Spencer appears to rely on the first, third, and fourth categories of *Monell* claims set forth above, i.e., the existence of an illegal official policy, the existence of a policy of inadequate training or supervision, and the existence of a custom of tolerance of federal rights violations.  However, Spencer's claim rests entirely on conclusory allegations that such a policy exists, that CCF failed to train its officers, and that CCF tolerates federal rights violations.  (*See* Doc. No. 20, ¶¶ 30, 31.)  As Defendants point out, Spencer fails to identify any specific institutional policy or custom, or connect Defendants to any policy, that was the "moving force" behind Spencer's arrest and alleged injuries. *Twombly*, 550 U.S. at 555; *Turner*, 412 F.3d at 639.  Instead, Spencer attempts to support her *Monell* claim with a reference to a 2014 incident between CCPD officers and a Black family, and with an excerpt from a study that appears to focus primarily on the disproportionate number of citations against Black residents by CCPD officers for marijuana possession, driving with suspended licenses, and criminal trespass.  (Doc. No. 20, ¶¶ 4, 30, Ex. A.)  Neither her reference to the 2014 incident nor her citation to the 2020 ProPublica study tend to make her conclusory allegations about the existence

of an illegal policy, the existence of a policy of inadequate training, or the existence of a tolerance of federal rights violations more plausible under *Twombly* and *Iqbal*. *See supra*. Thus, Spencer fails to state a *Monell* claim against CCF and any amendment of her Complaint to include such a claim would be futile.

Further, as discussed *supra*, with respect to her potential excessive force claim, and *infra*, with respect to her claims for deliberate indifference to a medical need and malicious prosecution, Spencer fails to allege any underlying violation of § 1983 in her proposed amended complaint. Under *Monell*, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *accord France v. Lucas*, 836 F.3d 612, 631 (6th Cir. 2016). Accordingly, the Court concludes that Spencer's potential amended *Monell* claim fails. Any amendment incorporating such a claim is therefore futile.

### 4.    Count 4, Deliberate Indifference to a Medical Need

In Count 4, Spencer alleges that Cheatham and Goins failed to render emergency medical care or first aid after she was struck in the chest, hit her head on metal pipes, and broke her wrist when the officers twisted her arm and wrist during her arrest. (Doc. No. 20, ¶¶ 38-39.) Spencer's proposed amended deliberate indifference claim is substantially similar to the deliberate indifference claim in her original Complaint, except that Spencer now specifies that she brings this claim under the Fourteenth Amendment. (*Id.* at ¶ 40.)

To state a claim for deliberate indifference to a medical need under the Fourteenth Amendment, a plaintiff must plausibly allege that the defendants were deliberately indifferent to her medical needs. *Esch v. Cnty of Kent*, 699 Fed. App'x. 509, 513 (6th Cir. 2017). Under the Fourteenth Amendment analysis, "[d]eliberate indifference has both subjective and objective components, and

19

requires proof that: (i) Defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed];' and (ii) Defendants actually drew that inference." *Id.* (citing *Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).  Additionally, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The Court concludes that Spencer's deliberate indifference to a medical need claim fails as a matter of law.  First, Spencer *did* receive medical treatment.  Though she alleges that Cheatham and Goins "failed to immediately summon[ ] emergency medical care to the scene" following her arrest, she concedes that Cheatham and Goins subsequently took her to the emergency room where medical staff treated her breathing problems and pain.  (Doc. No. 20, ¶¶ 39, 13.)

Second, Spencer fails to allege any facts about the length of the delay between when she complained of breathing problems and pain, and when Cheatham and Goins took her to the emergency room for treatment.  *See Craw v. Gray*, 159 F. Supp. 2d 679, 684 (N.D. Ohio 2001) (rejecting plaintiff's argument that the defendant-officer was deliberately indifferent to the plaintiff's medical needs because the officer "did not immediately respond to [the plaintiff's] complaints of pain").  She also failed to allege or show that any delay in seeking treatment exacerbated her injuries or that she suffered any detrimental effect as a result of the delay.  The fact that Spencer suffered some discomfort between the time that she first complained of her medical needs and when she received treatment is not sufficient to state a claim for deliberate indifference to a medical need.  *See Loukas v. Gundy*, 70 Fed. App'x 245, 247 (6th Cir. 2003) (affirming the district court's dismissal of

20

a deliberate indifference claim on the basis that the plaintiff failed to allege that a 24-day delay between his initial complaint of a broken foot and subsequent treatment for a minor fracture exacerbated his injuries or caused the plaintiff to suffer detrimental effects, other than discomfort).

Finally, Spencer fails to plausibly allege that Cheatham and Goins "actually drew [the] inference" that Spencer was at a "substantial risk of serious harm . . . ." *Esch*, 699 Fed. App'x. at 513. Spencer offers nothing more than a conclusory allegation that Cheatham and Goins "exhibited deliberate indifference" to her medical needs, which is insufficient to state a claim under *Twombly* and *Iqbal*. *Supra*. Because Spencer's proposed deliberate indifference to a medical need claim would fail as a matter of law, any amendment to include this claim would be futile.

### 5. Count 5, Malicious Prosecution

In Count 5, Spencer alleges a claim for malicious prosecution against Defendants under § 1983 because Defendants' employees "withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." (Doc. No. 20, ¶ 42.) Specifically, Spencer asserts that she sought the officers' body camera footage and surveillance recordings of her arrest, but that CCF refused to produce such footage during her criminal trial in state court. (*Id.* at ¶ 43.) Spencer claims that, as a result, she was forced to either "go to trial or plead no contest," and that there was a reasonable probability that if this exculpatory evidence had not been withheld, the outcome of her state court criminal proceedings would have been different. (*Id.* at ¶¶ 42-43.)

To state a constitutional malicious-prosecution claim, a plaintiff must allege that "(1) the defendant 'made, influenced, or participated in the decision to prosecute'; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 607 (6th Cir. 2021).

Spencer plainly fails to state a claim for malicious prosecution. Spencer fails to allege that any prosecution ended in her favor. (*See* Doc. No. 20, ¶¶ 42-43.) Indeed, Spencer was found guilty of disorderly conduct and resisting arrest. (Defs. Answer Ex. B, Doc. No. 7-2.) Because Spencer fails to allege one of the elements of a constitutional malicious-prosecution claim, her proposed amended malicious prosecution claim fails as a matter of law. Any amended complaint that incorporated such a claim would be futile.

### 6. Whether Spencer Alleges an Assault and Battery Claim

In her original complaint, Spencer pleads a claim for assault and battery under Ohio law. (*See* Doc. No. 1-2, ¶¶ 1 – 14.) However, Spencer fails to plead a separate assault and battery claim in her proposed amended complaint, although she alludes to an assault and battery claim in paragraph 3. (Doc. No. 20, ¶ 3.) Assuming that Spencer intended to allege an assault and battery claim in her proposed amended complaint, such a claim is futile because it is barred under Ohio's relevant statute of limitations.

Under Ohio law, a claim for assault and battery must be brought within one year after the cause of action accrues. Ohio Rev. C. § 2305.111(B). Ohio's statute of limitations on assault and battery claims provides:

(B) Except as provided in section 2305.115 of the Revised Code and subject to division (C) of this section, an action for assault or battery shall be brought within one year after the cause of the action accrues. For purposes of this section, a cause of action for assault or battery accrues upon the later of the following:

(1) The date on which the alleged assault or battery occurred;

(2) If the plaintiff did not know the identity of the person who allegedly committed the assault or battery on the date on which it allegedly occurred, the earlier of the following dates:

(a) The date on which the plaintiff learns the identity of that person;

22

(b) The date on which, by the exercise of reasonable diligence, the plaintiff should have learned the identity of that person.

*Id.*  An assault and battery claim brought outside the statute's one-year limit is barred.  *Kaschalk v. Parker*, No. 5:15-cv-1871, 2016 WL 3668161, at *2 (N.D. Ohio July 11, 2016) (granting judgment on the pleadings to defendants because the plaintiff's claims for battery and assault were brought more than a year after the alleged assault and battery occurred).

Spencer alleges that Cheatham and Goins assaulted and battered her on September 13, 2019. (Doc. No. 20, ¶ 3.)  Spencer did not file her original Complaint until September 1, 2021—nearly two years after the alleged assault and battery, and well beyond Ohio's one year statute of limitations. Though Spencer now alleges vaguely that the Ohio Supreme Court tolled the statute of limitations due to the COVID-19 pandemic, this apparent reference to the Ohio Supreme Court's 3/27/2020 *Administrative Actions*, 2020-Ohio-1166 does nothing to advance Spencer's argument.  (Doc. No. 20, ¶ 1.)  On March 27, 2020, Governor Mike Dewine signed Amended House Bill No. 197 into law, which "immediately tolled, retroactive to March 9, 2020, all statutes of limitations, time limitations, and deadlines under the Ohio Revised Code . . . until the expiration of Executive Order 2020-01D or July 30, 2020, **whichever is sooner.**" (3/27/2020 *Administrative Actions*, 2020-Ohio-1166, emphasis added.)  In accordance with the Order's language, the tolling period ended on July 30, 2020—nearly **two months before** the statute of limitations on Spencer's assault and battery claim expired on September 13, 2020.  Therefore, to the extent Spencer alleges a claim for assault and battery in her proposed amended complaint, the statute of limitations for assault and battery expired long before Spencer filed her Complaint and the claim fails.

Accordingly, because the Court concludes that all five of Spencer's proposed amended claims, as well as any potential assault and battery claim, would fail to survive a motion to dismiss, the Court concludes that Spencer's entire proposed amended complaint is futile. *Thiokol Corp.*, 987 F.2d at 383. Spencer's Motion to Amend is denied. Spencer's original Complaint remains the operative pleading in this case. (*See* Doc. No. 1-2.)

## III. Defendants' Motion to Strike

### A. Standard of Review

The Court now turns to Defendants' Motion to Strike. (Doc. No. 18, PageID# 152-55.) On its own or upon a motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A court has broad discretion in determining whether to grant a motion to strike." *McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 WL 2756915, at *2 (N.D. Ohio July 12, 2010). However, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009). Although Rule 12(f) only applies to pleadings, a court has "the inherent authority to strike non-pleadings in order to manage its docket." *Taylor v. JP Morgan Chase Bank, N.A.*, No. 3:15-CV-509-HBG, 2018 WL 5777497, at *3 (E.D. Tenn. Nov. 2, 2018).

### B. Analysis

At the outset of their Reply in Support of their Motion for Judgment on the Pleadings, Defendants ask the Court to strike new factual allegations that Spencer included in her Opposition, as well as an affidavit and various exhibits that she appended to her Opposition. (Doc. No. 18, PageID# 152-55.) Defendants argue that the Court may only consider matters within the pleadings

24

at this stage and that courts also routinely strike documents when they contain evidentiary material outside the scope of a Rule 12 motion. (*Id.* at PageID# 153.) Defendants argue that Spencer asserts new factual allegations—some of which contradict the factual allegations in her Complaint—in her Opposition, rather than defending her claims against the legal issues Defendants raised in their Motion. (*Id.*) Because these allegations, exhibits, and affidavit cannot be properly considered at this early stage, Defendants assert the Court should strike them. (*Id.* at PageID# 155.) Spencer did not respond to Defendants' Motion to Strike.

The Court declines to strike the new factual allegations and evidentiary materials included in Spencer's Opposition. The Court agrees with Defendants that it cannot consider Spencer's new (and sometimes contradictory) factual allegations in her Opposition, or the affidavit and exhibits appended to Spencer's Opposition, when ruling on a Rule 12 motion. However, motions to strike are disfavored, *see Frisby*, 669 F. Supp. 2d at 865, and the Court need not strike Spencer's new allegations and evidentiary materials to avoid considering them. The Court is aware of the standard of review of Rule 12 motions and will simply not consider these materials in its consideration of Defendants' Motion for Judgment on the Pleadings.

## IV.    Motion for Judgment on the Pleadings

### A.    Standard of Review

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless

clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim

26

is and the grounds upon which it rests."'"  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

### B.  Analysis

Spencer alleges three claims in her Complaint.  Count one sets out a claim for assault and battery against Defendants in violation of Ohio law.  (Doc. No. 1-2, ¶¶ 1-14.)  Counts two and three are substantially similar and set out three constitutional claims.  (*Id.* at ¶ 15 – 22.)  First, Spencer brings an excessive force claim under § 1983.  (*Id.* at ¶¶ 16, 21.)  Second, Spencer brings a deliberate indifference to medical needs claim under § 1983.  (*Id.* at ¶¶ 17-19.)  Third, Spencer alleges that Defendants CCF's and CCPD's training, supervision, and policies are inadequate to control officers' use of excessive force.  (*Id.* at ¶ 21.)

Defendants argue that Spencer's claims fail as a matter of law for several reasons.  (Doc. No. 9.)  First, Defendants argue that Spencer's § 1983 claim for excessive force is barred by *Heck v. Humphrey*.  (*Id.* at PageID# 96-98.)  Second, Defendants argue that Spencer's deliberate indifference claim is insufficiently pleaded and fails to state a claim.  (*Id.* at PageID# 99-102.)  Third, Defendants argue that CCF and CCPD cannot be subjected to vicarious liability under § 1983 and, further, that Spencer's single conclusory allegation as to their liability is insufficient to plead institutional liability under § 1983.  (*Id.* at PageID# 102-03.)  Finally, Defendants argue that Spencer's assault and battery claim is barred by the Ohio statute of limitations and, even if it wasn't, is insufficiently pleaded.  (*Id.* at PageID# 105-06.)

In her Opposition, Spencer argues that *Heck* does not bar her excessive force claim because the excessive force occurred after her arrest and *Heck* does not prevent excessive force claims based on officers' post-arrest conduct. (Doc. No. 14, PageID# 121-22.) Spencer also argues that she sufficiently pleaded her deliberate indifference claim because she was denied medical care and also because her medical care was delayed. (*Id.* at PageID# 123.) Finally, Spencer also refers to a supposed intentional infliction of emotional distress claim, which is nowhere to be found in her Complaint, and also argues that CCF failed to respond to subpoenas to produce body camera and surveillance footage of her September 13, 2019 arrest. (*Id.*)

### C. Count 1, Assault and Battery

As discussed above, under Ohio law, a claim for assault and battery must be brought within one year after the cause of action accrues. Ohio Rev. C. § 2305.111(B). Here, Spencer alleges that Officers Cheatham and Goins assaulted and battered her on September 13, 2019. (Doc. No. 1-2, ¶ 1.) Spencer did not file her Complaint until September 1, 2021—nearly a year after the statute of limitations expired. For the reasons discussed in Section II.B.6, *supra*, the Court concludes Spencer's claim is time-barred and that Defendants are entitled to judgment on the pleadings as to Count 1.

### D. Counts 2 and 3, Excessive Force

Spencer next alleges that Cheatham applied excessive force when he struck her in the chest, grabbed and twisted her right wrist and arm, and threw her into the metal pipes on the wall before placing her under arrest. (Doc. No. 1-2, ¶ 7-8.) Spencer does not allege any post-arrest use of excessive force. (*Id.*) As discussed above, the *Heck* doctrine bars any claim for excessive force as Spencer was found guilty of resisting arrest in contravention of Ohio. Rev. C. § 2921.33. *See supra*. Accordingly, for the reasons discussed in Section II.B.3, *supra*, the Court concludes that the *Heck*

doctrine bars Spencer's excessive force claim and that Defendants are entitled to judgment on the pleadings as to Spencer's claim of excessive force.

### E.     Counts 2 and 3, Deliberate Indifference to Medical Need

Spencer's deliberate indifference allegations in Counts 2 and 3 are nearly identical to her deliberate indifference claim asserted in her proposed amended complaint, other than that Spencer fails to identify under which Amendment she brings the instant deliberate indifference allegations. (*Compare* Doc. No. 1-2, ¶¶ 16-19 *to* Doc. No. 20, ¶¶ 36-41.)

Whether Spencer brought the instant deliberate indifference allegations under the Fourth Amendment, or the Eighth and Fourteenth Amendments, her deliberate indifference claim still fails as a matter of law for the reasons discussed above because the "Fourth Amendment objective reasonableness test is an 'easier standard for [a] plaintiff to meet' than the Fourteenth Amendment deliberate indifference test." *Esch*, 699 Fed. App'x at 514 (quoting *Smith v. Erie Cty. Sheriff's Dep't*, 603 Fed. App'x 414, 419 (6th Cir. 2015)).  Under the Fourth Amendment, a court evaluates only whether the defendant's conduct was "objectively reasonable." *Id.* (quotations omitted).  The Eighth and Fourteenth Amendments' deliberate indifference test, on the other hand, has both subjective and objective components. *Id.*  Because the Court already concluded that Spencer fails to allege facts that would satisfy either the subjective or objective components of the Eighth and Fourteenth Amendments' deliberate indifference test, *see supra* Part II.B.4, the Court concludes that Spencer fails to allege facts that would satisfy the Fourth Amendment's objective reasonableness test. *Id.* at 514-15 (citing *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010; *Smith*, 603 Fed. App'x at 419 (6th Cir. 2015)).  Defendants are entitled to judgment on the pleadings as to Spencer's deliberate indifference claim.ss

### F.      Counts 2 and 3, Vicarious Liability Under § 1983

Section 1983 does not impose vicarious liability on an institution for the allegedly unconstitutional torts of its agents. *Monell*, 436 U.S. at 694.  Rather, an institution is only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*  As discussed above, to properly allege an institutional liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess*, 735 F.3d at 478.  *See also D'Ambrosio*, 747 F.3d at 386.

Here, Spencer's Complaint contains just a single conclusory allegation about CCF's and CCPD's institutional liability.  She alleges, without additional detail, that CCF's and CCPD's "training, supervision and polices are not adequate to control the excessive use of force, the violation of citizens' rights and deliberate indifference by patrol personnel . . . ."  (Doc. No. 1-2, ¶ 21.)  This single conclusory allegation is insufficient to state a valid § 1983 claim against CCF and CCPD under *Twombly* and *Iqbal*.

Moreover, even if Spencer had sufficiently pleaded an institutional liability claim under § 1983 against CCF and CCPD, her claim would still fail because she does not set forth  any underlying claims for constitutional violations.  *See Williams v. Schismenos*, 258 F. Supp. 3d 842, 863 (N.D. Ohio 2017), *aff'd* 738 Fed. App'x 342 (6th Cir. 2018) ("[T]he constitutional violation of a municipal official is a prerequisite to municipal liability") (citations omitted).  Therefore, the Court concludes

that Defendants are entitled to judgment on the pleadings as to Spencer's § 1983 claim for institutional liability against CCF and CCPD.

**V.      Conclusion**

For the reasons set forth above, Spencer's Motion to Amend is DENIED.  Defendants' Motion to Strike is DENIED.  Defendants' Motion for Judgment on the Pleadings is GRANTED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
Date:  July 26, 2022                                    U. S. DISTRICT JUDGE

31